[No. 3708–II.   Division Two.   January 7, 1980.]

STANLEY R. SIDOR, *Appellant,* v. PUBLIC DISCLOSURE
COMMISSION, ET AL, *Respondents.*

*Thomas A. Brown,* for appellant.

*Slade Gorton, Attorney General,* and *Donald L. Law, Assistant,* for respondents.

PETRIE, J.—Plaintiff, Stanley R. Sidor, filed a complaint seeking damages from the Public Disclosure Commission, its administrator, and its five commissioners. The Attorney General of the State of Washington appeared on behalf of all defendants and moved for dismissal under CR 12(b)(6) for failure of the complaint to state a claim upon which relief can be granted. The trial court granted defendants' motion, and Mr. Sidor appealed to the Supreme Court. After briefs were filed in the Supreme Court the cause was transferred "for determination" to this division of the Court of Appeals. RAP 4.2(c).

Pursuant to procedures suggested by the en banc rehearing opinion in *Brown v. MacPherson's,* 86 Wn.2d 293, 545 P.2d 13 (1975), plaintiff has recited in his brief a hypothetical factual background which he intends to establish at trial and which, he contends, supports his alternative or concurrent theories of defamation, negligence, and strict liability. We accept the facts posited without comment as to their validity, and set them forth in full as presented in Mr. Sidor's brief:

> In 1975, the appellant Stan Sidor was an 18 year old young man who had just graduated from high school. Stan Sidor was an outstanding student with an impressive high school record, and a record of community involvement. Consistent with his past record of participation and community involvement, Mr. Sidor decided that he would run for election to the Aberdeen City Council in the elections to be held in the fall of 1975. He filed for a City Council position, and properly complied

with the law and regulations relating to the Public Disclosure Law of the State of Washington.

The plaintiff began a serious and conscientious campaign, intent upon winning the election. Over a period of several months, the candidate researched, doorbelled, prepared literature, attended council meetings, and made every effort to win the election.

The Public Disclosure Commission erroneously determined that the plaintiff had failed to comply with the Public Disclosure Law, and the applicable regulations. The exact reason for this mistake is unclear, but it was clear that the candidate had complied with the law and regulations.

The Public Disclosure Commission decided to release the name of this candidate, among others, to the media around the state, indicating that this candidate had failed to comply with the law. In doing this, the Public Disclosure Commission elected not to afford the candidate a hearing to determine the validity of this announcement, but proceeded directly to disclose the information. The candidate had no opportunity to prevent the release of the information, and it appeared on the front page of the local newspaper, and was broadcast on the most popular local radio station.

As a result of the release of this false information, the candidate lost the election. In addition to losing the election, his reputation was damaged, his good character was impugned, and he experienced humiliation, anxiety, nervousness, sadness, anger and regret over the incident, resulting in severe emotional pain and distress. The candidate suffered an emotional trauma which will continue to affect him for the rest of his life.

Plaintiff asserts that these facts give rise to a hybrid cause of action, *i.e.*, an animal whose parents belong to different species. He contends that the damages emanating from the Commission's decision to disseminate the false information to the news media suggest resolution of the issues by resort to the law of defamation but that the Commission's actions leading up to that act indicate a solution based upon principles of negligence or strict liability in tort. We find no reason to assist in the delivery of this unusual creature; and in order to understand our reluctance

to follow plaintiff's suggestion, a brief discussion of the law of defamation is desirable.

Under the common law, one who defamed another was held strictly liable to the party defamed regardless of the state of mind and prior knowledge of the defamer. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). Intention, motive, or negligence of the defamer had nothing to do with the case. *See* 1 F. Harper & F. James, *Law of Torts* 364 (1956).

██ Since 1964, however, it has been definitively established that the first and fourteenth amendments to the United States Constitution delimit a state's power to award damages for libel. *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964). Since 1974 it has been the law of the land that a state may devise its own standard of liability for awarding damages to a private individual, other than a public official or public figure, who has been defamed, so long as that standard does not impose liability without fault. *Gertz v. Robert Welch, Inc., supra.* Thus, any attempt to award damages caused by a defamatory publication under a theory of strict liability would run afoul of the First and Fourteenth Amendments.

Similarly, any attempt to award damages to a public official or a public figure caused by a defamatory publication based on a theory of simple negligence on the part of the defamer would also violate the constitutional limits on recovery for libel. *New York Times Co. v. Sullivan, supra; Curtis Publishing Co. v. Butts,* 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967). In this connection, we note a significant item of dictum in *Gertz v. Robert Welch, Inc., supra* at 344:

> An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case. And society's interest in the officers of government is not strictly limited to the formal discharge of official duties.

Mr. Sidor insists, however, that he should be allowed to plead and prove negligence and strict liability independently of any claim of defamation. He misconceives the nature of the injury inflicted upon him. He would have sustained no damages whatsoever but for the republication of the defamatory statements by local news media. In turn, of course, those media would not have published except for the information provided to them through the Public Disclosure Commission. That false information assaulted his good name and reputation in the community and tended to deprive him of the benefit of public confidence. By definition, that is the tort of defamation. *Purvis v. Bremer's, Inc.,* 54 Wn.2d 743, 344 P.2d 705 (1959). All actual damages alleged are recoverable through actionable defamation if the defendants are not privileged. *Farrar v. Tribune Publishing Co.,* 57 Wn.2d 549, 358 P.2d 792 (1961).

Notwithstanding the dual propositions that plaintiff's injuries resulted from but a single transaction by defendants and that all damages may be recovered through a defamation action, Mr. Sidor directs our attention to *Brink v. Griffith,* 65 Wn.2d 253, 396 P.2d 793 (1964) and to a note on that opinion in 41 Wash. L. Rev. 370 (1966). He asserts both suggest that if the trier of fact is cautioned to segregate damages, a plaintiff may combine, in a single suit, separate claims for invasion of privacy, intentional infliction of mental distress, and defamation, all arising out of a single transaction by a defendant.

Even if we were to conclude that *Brink* does suggest such a combination, which it does not, neither Mr. Sidor's complaint nor his posited fact pattern indicates a claim for invasion of privacy or a claim for intentional infliction of mental distress. Rather, his reference to *Brink* and to the law review note are intended, we presume, to suggest by analogy that *other claims* for separate injuries sustained may be combined with a claim for defamation when both injuries arise out of the same transaction. Plaintiff's complaint, however, does not assert separate injuries; it alleges only that varying standards of conduct be imposed upon

defendants for measuring their liability for tortious inflic-
tion of the *one* injury because, in the words of his own
brief, of "the conduct leading up to such act." In effect, he
alleges that defendants negligently published false infor-
mation, or that defendants should be held strictly liable for
publishing false information about him, as a result of which
he lost an election, and suffered emotional trauma causing
permanent damage. Going full circle, he lost the election
and suffered emotional trauma because his reputation was
damaged and his good character was impugned by reason of
the publication of the false information. Mr. Sidor was a
"public official"; neither his complaint nor his posited facts
assert a claim of malicious publication. The allegations are
insufficient to support a claim for damages. *New York
Times v. Sullivan, supra.*

We need not reach defendants' additional contention.
They assert, presumably as an affirmative defense, that
they are totally immune from liability for damages result-
ing from preparation and dissemination of the press release
by reason of the doctrine of executive privilege. Notwith-
standing our disposition of this appeal already noted, we
are inclined to comment on this issue also.

It has been established in this jurisdiction, under the
theory of executive privilege, that the Attorney General and
members of his staff are absolutely immune from defama-
tion liability regarding their actions in distributing a libel-
ous press release to news media when the release of that
information has more than a tenuous relation to their offi-
cial capacity. *Gold Seal Chinchillas, Inc. v. State,* 69
Wn.2d 828, 420 P.2d 698 (1966).[1] It is equally clear that a

---

[1]In *Gold Seal Chinchillas, Inc. v. State,* 69 Wn.2d 828, 420 P.2d 698 (1966),
the court did not appear to be unduly concerned about the defendants' burden of
establishing the affirmative defense of executive privilege, presumably because the
facts spoke for themselves. When the court determined that the attorney general
and his staff were absolutely immune by reason of executive privilege, it affirmed
a dismissal granted under CR 12(b)(6). *See Gem Trading Co. v. Cudahy Corp.,* 92
Wn.2d 956, 603 P.2d 828 (1979), for a discussion of the necessity for a plaintiff to
plead and prove an abuse of even a qualified privilege.

police chief of a metropolitan city is not protected from defamation liability under a theory of absolute immunity by reason of an executive privilege. *Moore v. Smith,* 89 Wn.2d 932, 578 P.2d 26 (1978). The question posed by this appeal is whether or not the Public Disclosure Commission, its commissioners, and its chief administrative officer are included among that class of officials absolutely privileged to publish defamatory matter if the publication has more than a tenuous relation to their official capacity.

Respected authority declares that an absolute immunity to publish defamatory matter exists for "a governor or other superior executive officer of a state." 3 Restatement (Second) of Torts § 591(b) (1977). In dictum, this jurisdiction has asserted that absolute privilege applies to "acts of important government executives." *Engelmohr v. Bache,* 66 Wn.2d 103, 104, 401 P.2d 346 (1965).

The Public Disclosure Commission was created by passage of Initiative Measure No. 276, effective January 1, 1973. By statute, the Commission is composed of five members (commissioners) who are appointed by the Governor with the consent of the Senate. RCW 42.17.350. Their statutory responsibilities include enforcement of the Public Disclosure Law. RCW 42.17.360. The first two statutory declarations of public policy of that law specify:

> (1) That political campaign and lobbying contributions and expenditures be fully disclosed to the public and that secrecy is to be avoided.
>
> (2) That the people have the right to expect from their elected representatives at all levels of government the utmost of integrity, honesty, and fairness in their dealings.

RCW 42.17.010(1) and (2).

There is no doubt that the commissioners and their chief administrative officer are superior executive officers of the State of Washington. Additionally, their actions in releasing to the news media names of candidates for public office who had failed to comply with the Public Disclosure Law had a more than tenuous relation to their official duties. We hold

134

that their release of information to the media indicating that Mr. Sidor had not complied with the disclosure law was absolutely privileged.

Judgment affirmed.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied February 4, 1980.

Review denied by Supreme Court April 3, 1980.