**Decided February 21, 1984**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| JOSEPH HILL, | ) | CIVIL ACTION NO. 82-0077 |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| THE GOVERNMENT OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS; CARLOS S. CAMACHO, individually and as GOVERNOR OF THE COMMONWEALTH; HERMAN Q. GUERRERO, individually and in his capacity as CHIEF ADMINISTRATIVE OFFICER OF THE COMMONWEALTH; RICHARD I. LASSMAN, individually and as ATTORNEY GENERAL OF THE COMMONWEALTH; and DOES 1, 2 and 3, | ) | DECISION |
| Defendants. | ) | |

## FACTS

For the purposes of this motion, plaintiff Joseph Hill's allegations are considered undisputed. Hill was employed by the Commonwealth of the Northern Mariana Islands (CNMI) as an Assistant Attorney General from March 4, 1980 until March 3, 1981. On or about March 5, 1981, the Attorney General, Richard I. Lassman, entered into an oral employment agreement with Hill whereby Hill would continue in his capacity as Assistant Attorney General for an additional period of one year. On or about May 4, 1981, Hill and Lassman signed a written contract formalizing the oral agreement extending Hill's employment through March 3, 1982.

For all times relevant to this action, the defendant Herman Q. Guerrero was the CNMI Chief Administrative Officer (CAO). As such, his duties included advising and assisting the Governor and exercising supervisory authority over personnel matters.

Sometime before May, 1981, Hill, pursuant to his duties, acted as legal counsel to the Chief of Labor. In one particular labor hearing, at which the Chief of Labor sat as the hearing officer, Guerrero represented his sister-in-law, an employer accused of underpaying her domestic help. The Chief of Labor ruled against Guerrero's sister-in-law and entered an order requiring that she pay back wages due the employee. When the order was not complied with, Hill filed an enforcement petition in the Commonwealth Trial Court. On May 1, 1981, upon learning of the petition, Guerrero met with Hill and the Chief of Labor and demanded that the petition be withdrawn and the order set aside. Should this not be done, Guerrero threatened to "review and reconsider" the employment contracts of Hill and the Chief of Labor. The petition was not withdrawn. On May 4, 1981, on the advice of Guerrero, Governor Camacho disapproved Hill's contract extension.

///

///

///

///

///

On February 4, 1982, Hill filed this action against the CNMI, Governor Camacho, the Attorney General and Guerrero; the defendants were named both in their official and individual capacities. Relevant to this motion are Count III, wherein Hill alleges interference with contract and violation of consitutional rights, and Count IV, wherein he alleges defamation.

Guerrero now moves this Court for summary judgment on the basis of an asserted absolute immunity from liability.

## STANDARD OF REVIEW

Summary judgment is appropriate only if it is demonstrated that there exists no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law. U.S. v. First National Bank of Circle, 652 F.2d 882, 887 (9th Cir. 1981). The Court must construe the pleadings, other record evidence and its attendant inferences most favorably to plaintiffs. Harlow v. Fitzgerald, ____ U.S. ____, ____, n.26, 102 S.Ct. 2727, 2737, n.26, 73 L.Ed.2d 396 (1982). A genuine factual issue may exist only if a viable legal theory would entitle plaintiffs to judgment if they prove their asserted version of the facts. Ron Tonkin Gran Turismo v. Fiat Distributors, 637 F.2d 1376, 1381 (9th Cir. 1981), cert.denied, ____ U.S. ____, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).

///
///
///

IMMUNITY

In his motion for summary judgment, Guerrero asserts that under the doctrine of absolute privilege, he is "immune from suit on account of acts or official communications made... in the line of duty." Memorandum in Support of Summary Judgment, p. 4. He relies on Section 591 of the Restatement of the Law, Torts 2d (Restatement), Izuka v. Camacho, Civil No. 81-0036 (D.N.M.I. Sept. 6, 1983) and Barr v. Mateo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) in support of his position.

Section 591 of the Restatement reads:

> An absolute privilege to publish de-
> famatory matter concerning another in
> communications made in the perform-
> ance of his official duties exists for:
>
> . . .
>
> (b) a governor or other superior
> executive officer of a state.

In Izuka v. Camacho, the plaintiff brought a libel action against the governor for damages allegedly resulting from a letter of discharge published by the Governor. On the Governor's motion for summary judgment, this Court, applying § 591 of the Restatement, held that the Governor possessed an absolute privilege to publish the defamatory remark. Guerrero now asks this Court to hold that the § 591 privilege applies to the CAO.

///
///
///

Comment c to § 591 reads:

> c. All of the state courts that have
> considered the question have agreed that
> the absolute privilege stated in Clause (b)
> protects the superior officers of the state
> governments, including at least the governor,
> the attorney-general or the heads of state
> departments whose rank is the equivalent of
> cabinet rank in the Federal Government. A
> good number of the States have gone further,
> and have extended the absolute privilege to
> state officers of various ranks below that
> of cabinet level.

The absolute privilege doctrine has been given broad application by the courts of many jurisdiction. See e.g. Barr v. Mateo, supra (privilege extended to Acting Director of Office of Rent Stabilization); Saroyan v. Burkett, 371 P.2d 293, 21 Cal.Rptr. 557 (Cal. 1962) (privilege extended to Superintendent of Banks); Verna v. Kleinbach, 427 P.2d 403 (Alaska 1967) (privilege extended to civilian personnel officer of United States Army); Grande v. State, 115 Ariz. 394, 565 P.2d 900 (1977) (privilege extended to officials of state Tax Commission); Shearer v. Lambert, 274 Ore. 449, 547 P.2d 98 (1976) (privilege extended to head of department of university); Sidor v. Public Disclosure Commission, 25 Wash.App. 127, 607 P.2d 859 (1980) (privilege extended to members of election commission).

///
///
///
///
///

The CAO oversees "day-to-day operations of the Executive Branch."[1] He provides "consultative, advisory and various administrative services to the Governor... and at the direction of the Governor will direct immediate execution of programs and performs other duties as may be delegated by... the Governor."[2] In addition the CAC has had, from time to time, extensive authority over personnel matters.[3] It is readily apparent that the CAO exercises broad discretion in daily government matters and is properly considered a "superior officer" to whom the absolute privilege defense should apply. Accordingly, Guerrero's summary judgment as to Count IV is granted.

Count III of Hill's complaint requires more in-depth consideration. Paragraph 36 reads in pertinent part:

> "Commencing on or about May 4, 1981, Defendant Guerrero individually and in conspiracy with others, maliciously, and with wilful intent to injure Plaintiff, conspired with the other defendants... to cause Plaintiff's discharge from his employment... by corruptly and without legal cause or justification, using his official position as CAO, to interfere with and to cause Defendant Governor to unjustly and unlawfully interfere with Plaintiff's employment relationship and contract...."

- - - - - - - - -

[1] Executive Order No. 2, 1 Commonwealth Register 2 (1980)

[2] Exhibit D attached to Guerrero's Declaration in Support of Summary Judgment.

[3] Memorandum of Attorney General concerning Personnel Services Contracts, Exhibit E attached to Guerrero's Declaration in Support of Summary Judgment.

Thus, Hill's complaint states a claim of interference with contract and interference with prospective contractual relations.[4]

Guerrero asks this Court to read *Izuka*, *Barr* and § 591 of the Restatement as extending to him an absolute *immunity* from civil liability for *official* acts performed within the outer perimeters of his authority. Guerrero confuses the "absolute privilege" defense to defamation with the doctrine of "official immunity."

Absolute privilege and official immunity are so interwoven, the distinction between the two is often blurred if not wholly unseen. Traditionally, absolute privilege has been available as an affirmative defense to allegations of defamation. W. Prosser, *Law of Torts*, § 114 (1971) (Prosser). Like other privilege defenses, such as self-defense and protection of property, absolute privilege in defamation law rests on the theory that conduct, otherwise actionable, escapes liability because the defendant is acting in furtherance of some interest of social importance. Such interests are so valuable that they are entitled to protection even at the expense of uncompensated harm to plaintiff's reputation. The privilege, however, has been limited to those few situations where there is an obvious policy

— — — — — — — — — —

[4] See Restatement § 766 and § 766 B.

914

in favor of permitting complete freedom of expression. Executive communication is recognized as one such interest. The need for free-flowing dialogue, comment and criticism, unhampered by frivolous lawsuits is considered so essential to an open government as to be paramount to the interest in compensating resulting defamations.

The doctrine of official immunity on the other hand protects an official from liability for actions taken within the scope of his or her official authority. Civil Actions Against State Government § 6.3 (Shepard's-McGraw/Hill 1982)("Shepard's"). The doctrine acts as a substantive limitation on an official's personal liability for damages. While the absolute privilege doctrine has been developing in this country for nearly a century, the doctrine of official immunity, in its present form, has only been in existence for twenty-five years.[5] Like absolute privilege, the official immunity doctrine attempts to balance important competing interests. The balances are struck between compensating the injury of the plaintiff and free-flow of dialogue (absolute privilege) and between compensation and the

— — — — — — — — —

[5]A similar doctrine was developed under English jurisprudence which shielded officials from personal liability as they were acting pursuant to royal command and the King was incapable of authorizing an illegal act. In 19th century American jurisprudence public employees generally had been held amenable to suit and liable for injuries caused by their acts or omissions. It is only during the last quarter century that the developing law has moved toward increased immunity for public officials. See Shepard's, § 6.2; K. Davis, Administrative Law Text § 26.01 (3rd ed. 1972).

need to protect the public officials from undue interference with their duties (official immunity). The major difference between the two doctrines, and of critical importance here, is the degree of the privilege or immunity afforded executive officials.

The privilege in defamation is absolute. So long as the official is acting within the outer perimeter of his or her authority, the defense will bar liability, notwithstanding the existence of improper motive or malice. Barr v. Mateo, supra. For officials seeking immunity for their alleged wrongful actions, a qualified or good-faith immunity represents the norm. Harlow v. Fitzgerald, ____ U.S. ____, 102 S.Ct. 2727, 2733, 73 L.Ed.2d 396, 403 (1982). The Supreme Court therein stated its belief that a qualified immunity allows the requisite protection while recognizing the importance of an available damage remedy to protect the rights of citizens. While the difference between the two doctrines appears contradictory, the Court notes two bases on which it can be supported.

///
///
///
///
///
///
///
///
///

First, it must be remembered that each doctrine has developed under independent branches of the common law. It is possible that there has not been a case (of precedential weight to this Court) which addressed the differences.[6] Alternatively, the difference can be attributed to basic principles of the American democratic system. Our system generally affords greater protection to speech than it does to action. Speech and the free-flow of information has consistently been accorded great weight. Conduct, on the other hand, although often extensions of speech have been more readily circumscribed because of their inherent potential for interference with the rights of others. See e.g. United States v. O'Brien, 391 U.S. 367, 98 S.Ct. 1673, 20 L.Ed.2d 672 (1968)(court more willing to balance "symbolic speech" with other government interests while very hesistant to do so with "pure speech"). See also W. Lockhart, Y. Kamisar, J. Choper, Constitutional Law, p. 1108 (5th Ed. 1980), quoting Emerson, The System of Freedom of Expression 84-90 (1970). Similarly, the law is more willing to afford greater protection

— — — — — — — — —

[6] One authority has expressed his displeasure with the absolute privilege approach and feels that a qualified privilege strikes the better balance. Prosser, § 114, p. 784. This Court agrees with that approach and would reconcile any conflict by disallowing an absolute privilege defense in favor of qualified privilege in defamation cases. However, the CNMI has adopted the Restatement as the rule of decision in its courts (1 TTC § 103) and this Court will defer to the Legislature for any changes perceived as necessary.

to free-flow of speech between government officials and allow absolute protection[7] whereas the balance is struck more in favor of compensation where actions create the injury. Thus, the difference, although appearing contradictory, and possibly undesirable, is not irrational.[8]

What immunity then may Guerrero assert in this action? As noted above, for executive officials in general, "qualified immunity represents the norm." Harlow v. Fitzgerald, supra, 102 S.Ct. 2733. Absolute immunity is the exception and, within the Executive Branch, has been recognized only for prosecutors and officers exercising adjudicative functions. Id. In Nixon v. Fitzgerald, ____ U.S. ____, 102 S.Ct. 2690, 73 L.Ed.2d 349, the Supreme Court extended, for the first time, absolute immunity to

- - - - - - - - - -

[7] Members of Congress, for example, are granted the privilege under the Constitution. Article I, Section 6.

[8] Guerrero would have this Court read Barr, Izuka and § 591 as extending the absolute privilege to conduct as well as statements. This position is not persuasive. Harlow v. Fitzgerald, supra, specifically sets forth the applicable standard for alleged statutory and Constitution violations as one of qualified immunity. As for common law actions, the cited cases concern alleged defamatory statements and speak in terms of absolute privilege, not immunity. Barr states its holding in the following manner:

> [W]e hold that petitioner's plea of absolute privilege in defense of the alleged libel published at his direction must be sustained.

(emphasis added). 79 S.Ct. at 1341. Izuka also concerns defamation and bases its holding on Barr and § 591. Accordingly, those two cases are considered by this Court to be limited to their facts.

918

the President of the United States, relying on a separation of powers analysis. However, in the companion case, Harlow v. Fitzgerald, supra, decided on the same day on the same facts, the Court rejected the argument that the absolute immunity afforded the President extended to his closest aides and advisors; such individuals, the Court held, were only entitled to a qualified immunity.

In reviewing Guerrero's claim of absolute immunity, the Court notes two general pronouncements of the Supreme Court. The burden of justifying absolute immunity rests on the official asserting the claim. Harlow, 102 S.Ct. at 2736. Guerrero asserts absolute immunity as necessary to protect his unhampered action as a high-ranking official. However, the Supreme Court has cautioned that "the greater power of [high] officials affords a greater potential for a regime of lawless conduct." Butz v. Economou, 98 S.Ct. at 2910. Guerrero has not convinced this Court that an absolute immunity is necessary to ensure the efficient and effective operations of the Commonwealth government. The Court believes that a qualified immunity sufficiently protects the CAO while adequately preserving the rights of the citizens.

///
///
///
///
///

919

The final point to address regarding immunity is the standard of review on a motion for summary judgment. The original standard for qualified immunity was developed in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) wherein a two-part test was established. A claim of qualified immunity would be rejected if either the official knew or should have known that his or her actions were unlawful or if the official took the action with malicious intent. This test gave the Supreme Court some trouble however in that any allegation of malice which had only minimal support would survive a summary judgment motion and subject officials to potentially lengthy trials thus bringing about the evils sought to be prevented by the immunity doctrine. Therefore, in Harlow v. Fitzgerald, supra, the Court established a modified test eliminating the subjective part of the Scheuer test. Under the modified test, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established legal rights of which a reasonable person would have known. 102 S.Ct. at 2738. In other words, if the actions are objectively reasonable, immunity attaches. If the law was clearly established, the immunity defense should fail since a reasonably competent public official should know the law governing his conduct. Id. at 2739.

///

///

///

920

Here, the law of interference with contract is well established and clearly set forth in the Restatement which has been adopted by the CNMI. The Court is of the opinion that a reasonable person would have known that Guerrero's alleged actions would violate Hill's rights to contract. Therefore, Guerrero's immunity defense fails and his motion for summary judgment on this issue is denied.

## DUE PROCESS CLAIM

Paragrah 38 of Hill's complaint reads:

> As a result of said malicious and wrongful acts of Defendants, Plaintiff was forced from employment with the Attorney General's Office and lost his title and position of Assistant Attorney General and Registrar of Corporations and subjected to a deprivation of his civil right to contract as secured by the United States Constitution and laws, and Plaintiff was unable to procure other employment in his usual vocation at a salary level or with the prestige of his employment with the Attorney Generals [sic] Office, and Plaintiff was forced to accept employment during the period in question at a lower salary.

Liberally reading these allegations, it is apparent that Hill is seeking monetary damages for alleged deprivations, without due process, of constitutionally protected interests. The appro-

///

///

///

921

priate claim, therefore, lies in an action pursuant to 42 U.S.C. § 1983.[9] Although the pleadings are inartful, the failure to specifically cite § 1983 is not fatal. In Aguirre v. Automotive Teamsters, 663 F.2d 108 (9th Cir. 1980), the Ninth Circuit panel stated:

> The rule in this circuit is clear:
> "If facts giving the court juris-
> diction are set forth in the com-
> plaint, the provision conferring
> jurisdiction need not be specifi-
> cally pleaded." [citing Williams
> v. U.S., 405 F.2d 951 (9th Cir.
> 1969), and Bowers v. Campbell,
> 505 F.2d 1155, 1157 n.2 (9th Cir.
> 1974]

In the cited opinion of Bowers it was held that where plaintiff alleged all the facts required to state a claim under section 1981, "[s]he was not required specifically to plead the statutory provision conferring jurisdiction." 505 F.2d 1157, n.2. This

- - - - - - - - -

[9] The Supreme Court has held that a direct cause of action under the Fourth Amendment, in appropriate circumstances, may be implied. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). While the Ninth Circuit has expressed a willingness to extend the Bivens rationale to other Amendments, Jacobson v. Tahoe Regional Planning Agency, supra; Bennett v. Campbell, 564 F.2d 329 (9th Cir. 1974), it has expressly refused to apply Bivens to the Fourteenth Amendment where § 1983 is applicable. Molina v. Richardson, 578 F.2d 846 (9th Cir. 1978); Ward v. Caulk, 650 F.2d 1144 (9th Cir. 1981).

922

Court, then, will address Hill's claims as if properly brought under § 1983.[10]

A successful assertion of a due process claim under § 1983[11] requires a showing that the government deprived plaintiff of a constitutionally protected liberty or property interest without notice and an opportunity to be heard. The Court addresses first the property claim.

— — — — — — — — —

[10]The Court feels it important to make note of the inartfulness of Hill's pleadings on his constitutional claim. The allegations are mere conclusory statements demonstrating a "shotgun" approach to pleading wherein the plaintiff leaves the Court with the task of precipitating out specific claims of constitutional magnitude. However, the federal rules require only a short and plain statement of the facts putting the defendant on notice as to plaintiff's claim and the ground on which it rests. Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80, 85 (1957). In his reply memorandum in support of his motion, Guerrero addresses Hill's constitutional claim evidencing an awareness of the claim and a willingness to defend on the merits. Guerrero has made no motion to dismiss, rather he has moved for summary judgment. Therefore, the Court feels that the pleading requirements have been met or, at a minimum, have been conceded to by Guerrero.

[11]§ 1983 reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

923

Hill asserts that Guerrero's actions unconstitutionally deprived him of his employment rights under the second year contract. Guerrero cites Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 22 L.Ed.2d 548 (1972) to support his position that Hill held no property interest recognized or protected by the Constitution.

Guerrero correctly cites Roth as a leading statement by the Supreme Court on the property interests protected by due process. The Court discussed the parameters of such interests:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests--property interests--may take many forms.
>
> . . .
>
> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
>
> . . .
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

92 S.Ct. at 2708-2709.

924

Hill signed a contract which was also endorsed by the Attorney General, the Personnel Officer and the Finance Officer but was subsequently disapproved by the Governor. Whether Hill had a valid claim of entitlement depends on "the existing rules and understandings" under which he entered into the contract. For example, did Lassman have authority to bind the CNMI? Did the Governor have the authority to disapprove the contract? If so, was Hill aware of this or should he have been so aware? The record on this issue is lean, leaving many questions of fact unanswered. The Court is unable at this time to conclusively determine that Guerrero must prevail as a matter of law and accordingly denies the motion on this issue. [12]

Hill also raises a claim based on infringement of his liberty interests. Guerrero relies on Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) to support his contention that any defamation under the facts as alleged would not constitute an infringement of any recognized liberty interest; however, Guerrero is mistaken in his interpretation. While Paul does hold that a defamation alone does not implicate due process liberty interests, it does not erode the Court's position stated in Roth that a defamatory charge coupled with a tangible loss may infringe upon due process interests. Stretten v. Wadsworth Hospital, 537 F.2d 361 (9th Cir. 1976).

--------

[12] Guerrero is entitled to a qualified immunity on the constitutional claims as well. Scheuer v. Rhodes, supra; Harlow v. Fitzgerald, supra. However, because of the state of the record, the Court is unable to analyze the immunity claim and accordingly denies the motion on this ground.

 A person's liberty interest in the employment context is an independently protected interest, separate from one's property rights in continued employment. When a termination or a decision not to rehire a government employee is accompanied by charges which affects one's reputation or standing in the community so as to foreclose the employee from taking advantage of available job opportunities, due process interests are implicated. Roth, supra; Orloff v. Cleland, 708 F.2d 372 (9th Cir. 1983); Vanelli v. Reynolds School District No. 7, 667 F.2d 773 (9th Cir. 1982). When a person's reputation, honor and integrity are at stake because of a government action, due process comes into play. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (19 ___). When such charges are made, due process requires that a person be given notice and an opportunity to clear his or her name. Codd v. Velger, ____ U.S. ____, 97 S.Ct. 882, ____ L.Ed.2d ____ (1977); Ong v. Tovey, 552 F.2d 305 (9th Cir. 1977); Quinn v. Syracuse Model Neighborhood Corporation, 613 F.2d 438 (2nd Cir. 1980).

 Not every statement which accompanies an adverse employment decision infringes upon liberty interests, however; the Constitution does not stand as a guarantee against ill-advised employment decisions. Bishop v. Wood, supra; Gray v. Union County Intermediate Education District, 520 F.2d 803 (9th Cir. 1975). The charge must be made public. Bishop, supra; Orloff v. Quinn, supra; Quinn v. Syracuse, supra. The allegation must seriously damage the employee's standing in the community or

impose a stigma or other disability that forecloses his or her freedom to take advantage of other employment opportunities. The allegation must be so serious that it "belittles his worth and dignity as an individual and, as a consequence is likely to have severe repercussions _outside_ of professional life." Stretten v. Wadsworth Hospital, 537 F.2d at 366 (emphasis in original). Accord, Bullow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093 (9th Cir. 1981); Debose v. U.S.D.A., 700 F.2d 1262 (9th Cir. 1983).

Hill alleges that Guerrero stated to the press in connection with the contract veto, that "Hill's handling of labor cases in general had been poor." This allegation alone is insufficient to implicate constitutional interests. The panel in Stretten, _supra_, analyzed a similar fact pattern:

> Liberty is not infringed by a label of incompetence, the repercussions of which primarily affect professional life, and which may well force the individual down one or more notches in the professional hierarchy. The distinction is not perfect; our utility affects our dignity and worth whether viewed from within or without. However, implicit in such a distinction is the notion that the consitutional need for procedural protection is not strong when the charge (_e.g._, incompetence) involves a matter which is peculiarly within the scope of employer-employee relations and when the likely results of even a false charge are reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of gainful employment within the trade or profession.

927

537 F.2d at 366. Thus, charges of incompetence alone do not rise to constitutional infringement. Debose v. U.S.D.A., supra; Ong v. Tovey, supra; Mazelski v. Truesdell, 562 F.2d 701 (D.C.Cir. 1977); Mervin v. FTC, 591 F.2d 821 (D.C.Cir. 1978); Paige v. Harris, 584 F.2d 178 (7th Cir. 1978). It is clear then that under the facts alleged, Hill suffered no infringement upon his liberty interests. Summary judgment on this issue is accordingly granted.

## CONCLUSION

For the reasons stated herein; Guerrero's motion for summary judgment is:

(1) GRANTED as to Count IV on the basis of absolute privilege;

(2) GRANTED as to Hill's due process liberty claim under Count III;

(3) DENIED as to Hill's due process property claim under Count III; and

(4) DENIED as to Hill's interference with contract under Count III.

DATED this 21st day of February, 1984.

_____
JUDGE ALFRED LAURETA

928