[No. 37858.     Department Two.     November 25, 1966.]

GOLD SEAL CHINCHILLAS, INC., *et al., Appellants*, v. THE STATE OF WASHINGTON, *Respondent.**

*Reported in 420 P.2d 698.

*E. Albert Morrison*, for appellants.

*The Attorney General, Dean A. Floyd, Lloyd W. Peterson*, and *Charles F. Murphy, Assistants*, for respondent.

FINLEY, J.—On August 1, 1963, a complaint was filed by the consumer protection division of the Attorney General's staff charging Gold Seal Chinchilla, Inc., and Gold Seal Chinchilla Association, and one Estel G. Streets (an officer of both corporations) with certain violations of the consumer protection laws, codified in chapter 19.86 RCW. On the same date, the office of the Attorney General issued a press release. It told about the initiation of the suit, the nature of the alleged violations, and it contained information specifically identifying the three defendants (appellants herein). These three defendants, apparently under the provisions of RCW 4.92.100, filed a claim with the State Auditor for damages suffered as the result of the allegedly defamatory conduct by the Attorney General and his staff in filing the consumer protection lawsuit and issuing the press release. The claim was denied by the State Auditor. A lawsuit was initiated against the State of Washington on December 5, 1963, by all three consumer-protection defendants, alleging they had suffered general and special damages, totaling $13 million, as a result of the allegedly tortious conduct of the Attorney General and his staff.

The consumer protection action against the parties was settled by a stipulated consent judgment entered on July 20, 1964, and need not concern us further. The libel action was dismissed by the trial court on June 15, 1964, for failure to state a claim upon which relief could be granted. Thereupon, plaintiffs in the libel action appealed. The issue presented in this appeal is whether the conduct of an executive officer of the state and his staff, namely, the Attorney

General and his staff, is absolutely privileged with respect to the publication of the allegedly libelous statements.

A motion to dismiss for failure to state a claim upon which relief could be granted under Rule 12(b)(6) of the Washington Rules of Pleading, Practice and Procedure requires the plaintiffs' complaint to be scrutinized carefully. Dismissal is appropriate only if it can be said that there is no state of facts which the plaintiff could prove in support of entitling him to relief under his claim. *Christensen v. Swedish Hospital,* 59 Wn.2d 545, 368 P.2d 897 (1962); *Sherwood v. Moxie School Dist.,* 58 Wn.2d 351, 363 P.2d 138 (1961); *Conley v. Gibson,* 355 U.S. 41 (1957).

The defense of *absolute privilege* or immunity under the law of defamation avoids all liability. Prosser, Torts, § 109 (3d ed. 1964). *Spalding v. Vilas,* 161 U.S. 483 (1896). Thus, if the Attorney General and his staff were absolutely privileged regarding their actions in the instant matter, the motion to dismiss the appellants' claim under Rule 12(b)(6) was properly granted.

The plaintiffs-appellants' complaint in the instant action incorporates by reference and contains an attached copy of the claim submitted to the State Auditor. It is somewhat difficult to ascertain the specific acts alleged to be tortious, since the averments of the Auditor's claim were not made in separately numbered paragraphs, as would be necessary under the provisions of Rule 10(b) of the Washington Rules of Pleading, Practice and Procedure. We assume from the written and oral arguments presented in behalf of appellants that their claim in no way refers to any alleged libelous matter contained in the complaint which was filed in the consumer protection action. Allegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought, whether or not the statements are legally sufficient to obtain that relief. *McClure v. Stretch,* 20 Wn.2d 460, 147 P.2d 935 (1944); *Johnston v. Schlarb,* 7 Wn.2d 528, 110 P.2d 190, 134 A.L.R. 474 (1941).

Essentially, the problem herein is whether or not the

Attorney General and members of his staff were absolutely privileged in the issuance of the press release concerning the initiation of the litigation. The press release was furnished to national wire services and to interested trade journals by virtue of their particular sphere of activity; in this instance, the *National Chinchilla Breeder* and the *Fur Age Weekly*. Instead of paraphrasing or quoting only parts of this press release, the full text is as follows:

NEWS RELEASE—August 1, 1963

PASCO—Attorney General John J. O'Connell today filed suit in Franklin county Superior court against Gold Seal Chinchillas, Inc., and the Gold Seal Chinchilla Association, of Tacoma.

The Attorney General's civil suit listed 14 separate specifications of alleged violations of the State Consumer Protection Act.

Also named as a defendant is Estell G. Streets, an officer of both corporations, and principal stockholder in Gold Seal Chinchilla, Inc., a corporation chartered by the state of Oregon. The association is a nonprofit cooperative agricultural organization doing business as a state of Washington corporation.

Principal offices for both corporations is 5446 South Washington, Tacoma. The corporations do business in 14 western states.

Attorney General O'Connell said in a statement following filing of the suit that the legal action is not an attack on the entire chinchilla raising industry in the state of Washington. A number of independent chinchilla ranchers were of great assistance to the Attorney General's office in the investigation of the Gold Seal firms, O'Connell said.

The suit asks the court to issue a permanent injunction forbidding the various business practices complained of, that the court appoint a receiver for the assets of Gold Seal Chinchillas, Inc. and the defendant Street "to insure that said defendants are financially amenable to the legitimate claims of individuals throughout the state, who as a result of the defendants' unfair and deceptive acts and practices have been induced to purchase animals from said defendants."

Major points among the allegations of violation of the Consumer Protection act were:

1. "That it is practicable to raise chinchillas in the

home and large profits can be made in this manner. In truth and in fact in most cases it is not profitable to raise chinchillas in the home and large profits cannot be made in this manner. . ."

2. "That the breeding and raising of chinchillas for pelts is easy and simple, taking just a few minutes per animal per day and that anyone can raise chinchillas and make a profit. In truth and in fact, chinchilla ranching is a highly specialized endeavor fraught with hazards for the inexperienced; . . ."

3. That the chinchillas offered for sale by the defendants were of the "very best possible quality" or "top quality," when in truth and in fact "many such chinchillas were actually 'culls' or 'scrubs,' or otherwise worthless as breeding or pelting stock."

4. "That a prospective purchaser must 'sign now as this is the last chance to sign up and that no more ranchers will be signed up for three or four years.' Such statements are false and deceptive and serve only as 'pressure' to sign the contract without allowing the purchaser time for further independent investigation as to the validity of the defendant's claims."

5. "That the name of the Co-op is deceptively similar to the Company, contrary to the express provisions of . . . (state law) which serves to confuse and mislead purchasers into believing that the nonprofit Co-op is actually the vendor of the chinchillas, instead of the Company, which is a profit corporation. Many purchasers are unaware there are in fact two separate corporations."

The suit alleges that the violations of the Consumer Protection act complained of have occurred in Franklin, Adams, Benton, Spokane, and King counties.

It can readily be perceived that the major portion of the press release consists of verbatim quotes from the complaint filed in the consumer protection action. Furthermore, the press release specifically refers to "alleged violations" of the State Consumer Protection Act. It does not purport to present or describe *as judicially established facts* those acts of the defendants which were the basis of the consumer protection lawsuit.

In determining whether or not to afford such acts the total immunity and protection of the defense of absolute privilege, we are really balancing two public interests. The

first interest is both a public and an individual one. Each member of the body politic, as an individual, and the collective public (the body politic) should have an interest in the protection of individuals and business entities from attacks upon their reputations in relation to their business activities. But a counterbalancing interest of the public involves the free and uninhibited dissemination of information about government activities. Without delving specifically into the numerous federal and other state jurisdiction cases which have dealt with the problem of the defense of absolute privilege in suits against government executive officials, suffice it to say that the overwhelming majority of cases have struck the balance in favor of encouraging public officials to speak with complete candor—and without fear of legal recourse—with respect to their official duties. See *e.g., Barr v. Matteo,* 360 U.S. 564 (1959); *Matson v. Margiotti,* 371 Penn. 188, 88 A.2d 892 (1952); and the leading case of *Spalding v. Vilas, supra.*

We are in accord with the result and underlying reasoning found in these decisions. The Attorney General is charged with the administration and enforcement of the Anti-Trust and Consumer Protection Laws of the state of Washington by virtue of the provisions of chapter 19.86 RCW. Public knowledge of the initiation of actions pursuant to these laws would seem to be of paramount importance in terms of making the public aware (1) that the laws were being enforced, and (2) that the Attorney General, as an elected official of the state, is adequately performing the duties of his office and is meeting his responsibilities to the electorate. The appellants argue that the Attorney General has no *specific statutory duty* to inform the public by means of preparation of a press release concerning his initiation of consumer protection litigation. No statutory delineation of such responsibility is necessary, however, inasmuch as the Attorney General, as an elected officer of cabinet rank in state government, has an implicit duty by virtue of his position to inform the people of the state of Washington of actions taken in his official capacity.

Our determination that the Attorney General is ab-

solutely privileged in this respect does not open the flood-gates for irresponsible state official action to libel maliciously opponents or people who would thwart or frustrate official desires and aims which might possibly involve illicit or illegal purposes. The allegedly libelous publication or oral pronouncement must have some relation to the general matters committed by law to the control or supervision of the particular state official. *Spalding v. Vilas, supra.* As long as the acts complained of have more than a tenuous relation to their official capacity, state officials, acting through the members of their staffs, are absolutely privileged with respect to the content of their oral pronouncements or written publications.

The judgment of the trial court dismissing the appellants' complaint for failure to state a claim on which relief could be granted is hereby affirmed.

DONWORTH and HAMILTON, JJ., and LANGSDORF, J. Pro Tem., concur.

ROSELLINI, C. J. (concurring in the result)—As the majority state, the issue on this appeal is whether the Attorney General and members of his staff were absolutely privileged in the issuance of the press release concerning the initiation of the litigation. As they also observe, the Attorney General is not required by law to issue press releases, but I agree that it can be inferred that he has a duty to keep the public informed about the activities of his office. Since his office initiates litigation on behalf of the state, it would seem that he has a duty, or at least a right to keep the public informed concerning the nature of the litigation which he instigates.

On the other hand, we have Canon 20 of the Canons of Professional Ethics, which reads:

> Newspaper publications by a lawyer as to pending or anticipated litigation may interfere with a fair trial in the courts and otherwise prejudice the due administration of justice. Generally they are to be condemned. If the extreme circumstances of a particular case justify a statement to the public, it is unprofessional to make it anonymously. An *ex parte* reference to the facts should

not go beyond quotation from the records and papers on file in the court; but even in extreme cases it is better to avoid any *ex parte* statement.

I do not think that this canon should be overlooked in any discussion of the Attorney General's rights and duties in a case of this nature. He is the lawyer for the state, a most powerful and influential client. Consequently, he should be particularly mindful of the harm that may befall an opponent in litigation if his exercise of the privilege to disseminate information is abused. And I believe that the opinion of the court in this case should make it clear that the right or duty to inform the public concerning the Attorney General's performance of his duties does not include a license to make gratuitous statements concerning the facts of the case or disparaging the character of other parties to an action.

As I read the press release involved in this suit, it does not go beyond quotation from the record in any significant way. The complaint, of course, is open to the public and the press would have had access to it without the aid of a press release. While even this type of statement by a private attorney is discouraged by the canon, I am willing to concede that the public duties of the Attorney General may justify his making such a statement; however, it is not a practice which is recommended.[1]

If he chose to issue a statement which contained libelous matter outside the matter quoted from the record, I would be inclined to the belief that the publication was not in the public interest and therefore not privileged.

Inasmuch as I believe that the opinion filed in this case should take cognizance of the pertinence of Canon 20, and the rule should be stated less broadly than it is stated in that opinion, I concur only in the result.

---

[1] The filing of a complaint will, in most instances, be given publicity by the news media.