Ralph L. WILLIAMS and Mary Jane Williams, his wife, Plaintiffs-Appellants,

v.

Slade GORTON and Sally Gorton, his wife, etc., Defendants-Appellees.

No. 74–2627.

United States Court of Appeals, Ninth Circuit.

Jan. 19, 1976.

Jennings P. Felix (argued), Seattle, Wash., for plaintiffs-appellants.

Angelo R. Petruss, Asst. Atty. Gen. (argued), Olympia, Wash., for defendants-appellees.

## OPINION

Before BROWNING and CHOY, Circuit Judges, and LUCAS,* District Judge.

CHOY, Circuit Judge:

Ralph Williams,[1] a resident of California, brought this Civil Rights Act (42 U.S.C. §§ 1983, 1985) and diversity defamation action against Slade Gorton, the Attorney General of Washington, and fifty unnamed defendants. The district court dismissed the action on Gorton's motion. Williams appeals.[2] We affirm in part and reverse and remand in part.

### Background

Williams did business as a Chrysler-Plymouth dealer in Seattle through Ralph Williams' North West Chrysler Plymouth, Inc., of which he was president. In October 1970, the State of Washington brought a consumer protection action against Williams and the

---

* The Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

1. Williams' spouse and Gorton's spouse are merely nominal parties.

2. One of the points raised in his appeal is that the district court abused its discretion in denying him leave to take certain depositions pursuant to subpoenas duces tecum. The issue is not reviewable on this appeal. It was not raised in the motion for dismissal or in connection with it; it is not a part of the judgment of dismissal from which this appeal was taken.

dealership alleging various false, deceptive, misleading, and unfair trade practices in selling new and used cars.[3] In December 1970, the assets of the corporation were seized by the State Department of Revenue for non-payment of taxes, and the dealership was terminated, ending the business.

In May 1972, the state court dismissed the consumer protection action, and the State appealed to the State Supreme Court. Pending the appeal, Gorton, while campaigning for re-election in the Fall of 1972, made many uncomplimentary statements about Williams and the car dealership.

In November 1972, Williams filed this action alleging, among other things, that Gorton's statements were defamatory because:

(1) Gorton told a group of lawyers that Ralph Williams was the most flagrant violator of the consumer protection laws that he had ever seen while in office.

(2) Gorton stated in the official voters' pamphlet that he had forced clean-up of questionable car dealer practices, particularly as to Williams.

(3) A Gorton election handbill accused Williams of being a con-man.

(4) Such statements were also made by Gorton in speeches and in radio and television advertisements.

Williams also alleged that these statements deprived him of his constitutional rights.

Gorton moved to dismiss the complaint under F.R.Civ.P. 12(b)(1), lack of jurisdiction over the subject matter, and 12(b)(6), failure to state a claim upon which relief can be granted. The district court granted the motion in July 1974, without stating reasons. Subsequent to the dismissal, the state consumer protection action was tried without a jury pursuant to a Washington Supreme Court remand. *See State v. Ralph Wil-*

*liams' N.W. Chrysler Plymouth, Inc.,* 82 Wash.2d 265, 510 P.2d 233 (1973). In November 1974, the state trial court found that Williams had engaged in numerous unfair and deceptive practices in violation of the State's Consumer Protection Act and Unfair Motor Vehicle Business Practices Act and assessed fines and penalties in excess of $270,000. Williams appealed, and the State Supreme Court decision is pending.

In the meantime, Williams has appealed from the district court's dismissal of this action. We must examine each of his two alleged claims for relief separately.

### Civil Rights Action

Williams contended that Gorton's statements served to deprive Williams of, in the words of his complaint, "the right to a fair and impartial trial before an impartial jury." Also arguing that Gorton acted under color of state law, Williams thus alleged a cause of action under 42 U.S.C. §§ 1983 and 1985, parts of the Civil Rights Act of 1871.

■ Two elements are necessary to establish a claim for damages under these sections: (1) the conduct complained of was engaged in under color of state law, and (2) the conduct subjected the plaintiff to the deprivation of rights, privileges, and immunities secured by the Constitution of the United States. *Marshall v. Sawyer,* 301 F.2d 639, 649 (9th Cir. 1962).

■ We agree with the district court that Williams' complaint failed to state a claim under the Civil Rights Act. The complaint detailed the allegedly defamatory statements made by Gorton, but defamation itself does not establish a cause of action under these sections. It is the deprivation of constitutional rights for which the Act creates a remedy, and on that score the allegations contained in the complaint were deficient. The com-

---

**3.** Williams was charged with violation of the Consumer Protection Act (Wash.Rev.Code 19.-86), the Retail Installment Sales Act (Wash. Rev.Code 63.14), and the Unfair Motor Vehicle Business Practices Act (Wash.Rev.Code 46.70).

plaint contained only conclusory words to the effect that Gorton's statements deprived Williams of a fair trial before an impartial jury. No explanation or more specific allegations were included.

Upon examination of the circumstances, we have difficulty discerning any constitutional deprivation or damages. The implicit argument was that Gorton's statements, deliberately and widely disseminated to voters in the state, served to prejudice potential jurors, whose names are drawn from the list of registered voters, in Williams' consumer protection trial. Williams' brief to this Court cites the right under the sixth amendment, applied to the states under the fourteenth amendment, to trial by an impartial jury. The sixth amendment is limited to criminal prosecutions, however, and the trial which Williams faced for violation of Washington consumer protection statutes was not a criminal prosecution. It was an equitable action in which the state sought civil rather than criminal penalties. Indeed, even under state law there is no right to a jury verdict in such proceedings; where a jury is impaneled, its role is advisory only. We fail to see just what constitutional right of Williams was infringed, and the complaint certainly failed to make it plain. The circumstances at the time of the complaint's filing provide no illumination. On that date, November 2, 1972, Williams had already won dismissal with prejudice in the state trial court of the consumer protection action against him. To be sure, that dismissal was then on appeal and would eventually be reversed by the State Supreme Court, resulting in a new trial and conviction of Williams, but the complaint could not and did not make any such projection. Moreover, Williams had already voluntarily waived a jury in the initial consumer protection action and did so well before Gorton made any of the statements in his 1972 campaign for re-election. Gorton could not be said to have deprived Williams of something he had already given up.

There is an implication in Williams' brief that Gorton's statements served to prejudice potential judges as well as jurors and in that way infringed Williams' constitutional rights. Such a claim is not obvious in the complaint. In neither the complaint nor submissions to this Court have there been specific allegations to that effect; nor has it been stated what constitutional right of Williams was violated or what efforts he made to negate the prejudicial effects by requesting a continuance or change of venue. The complaint stated no cognizable claim on such ground.

Under the circumstances, therefore, dismissal of the claim under the Civil Rights Act was appropriate. The allegations in the complaint as to deprivation of constitutional rights were "vague and conclusory." *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 860 n. 27, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). The factual surroundings do not serve to fill in the gaps, but instead make the purported prejudice to Williams' constitutional rights even more difficult to perceive. We therefore affirm the district court's dismissal of this portion of Williams' action.

*Defamation Claim*

Although the primary thrust of Williams' complaint was based on the Civil Rights Act, there was also alleged a claim for libel and slander, with federal jurisdiction established by diversity of citizenship and the amount in controversy. As with the Civil Rights Act portion, the district court gave no reasons for dismissing this cause of action. On this part, however, as the record stands we are unable to agree that the complaint failed to state a claim.

The foundation of this claim is the defamation itself—no allegation of constitutional deprivation is required—and the complaint set out the alleged libels and slanders, characterizing them as such. It detailed how the statements were published and how they clearly referred to Williams. It also alleged the basis for diversity jurisdiction. It is true that the complaint did not contend that Gorton acted with malice or that the

statements were false, nor did Williams describe how his personal or business reputation was damaged. We believe, however, that all the elements necessary for the defamation cause of action—from common law and from the first amendment protections of speech announced in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny—were at least inferable from the complaint, so the cause was adequately pleaded. Ordinarily a motion to dismiss should be disfavored, and doubts should be resolved in favor of the pleader. *Pond v. General Electric Co.,* 256 F.2d 824, 826–27 (9th Cir. 1958); *see* Wright & Miller, Federal Practice and Procedure: Civil § 1245 (1969).

The primary attack launched by Gorton against Williams' defamation claim is the contention that Gorton, as the Attorney General, is absolutely privileged, so that no defamation claim could be stated against him. This is, of course, a question of Washington law. In support of the proposition Gorton cites *Gold Seal Chinchillas, Inc. v. State,* 69 Wash.2d 828, 420 P.2d 698 (1966), the leading Washington precedent regarding such privilege. In that case the State of Washington was sued for libel based on statements made in a press release issued by the office of a previous Attorney General. The press release was issued on the same day that the Attorney General's staff filed a consumer protection action against the parties who later brought the action for libel, and it announced the suit and described the alleged violations. The Washington Supreme Court affirmed a lower court's dismissal of the libel action for failure to state a claim, concluding that:

> As long as the acts complained of have more than a tenuous relation to their official capacity, state officials, acting through the members of their staffs, are absolutely privileged with respect to the content of their oral pronouncements or written publications.

420 P.2d at 701.

*Gold Seal* used broad language, but it is apparent that it did not intend to grant the Attorney General a limitless immunity. To be privileged, the statements must have had "more than a tenuous relation to [his] official capacity." The cases cited in *Gold Seal* to support the absolute privilege defense impose the same requirement. In *Barr v. Matteo,* 360 U.S. 564, 570 n. 8, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 1434 (1959), for example, the United States Supreme Court noted the privilege covering press releases issued at the direction of Cabinet officers "so long as *their contents and the occasion for their issuance* relate to the duties and functions of the particular department." (Emphasis added.) Similarly, see *Spalding v. Vilas,* 161 U.S. 483, 498, 16 S.Ct. 631, 40 L.Ed. 780 (1896); *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892, 895, 896 (1952).

In making the statements complained of, Gorton may have acted in either or both of two roles: as Attorney General or as a candidate for re-election. We recognize that these two are not mutually exclusive, and that *Gold Seal* lists "making the public aware . . . that the Attorney General, as an elected official of the state, is adequately performing the duties of his office and is meeting his responsibilities to the electorate" as one of the reasons for the privilege. 420 P.2d at 701. Still, there remains some limit to the official protection, and the declarations here may have been made beyond its reach. The contents of the statements related to the Attorney General's official activity, but the occasion for their issuance, and the means used to disseminate them and their financing could be shown to be purely electioneering in a private capacity. Since the privilege recognized by *Gold Seal* is limited to activities in an official capacity, these statements may not have been privileged.

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). It was not so beyond doubt that the facts could not support Williams' claim for defamation. We therefore reverse and remand for further proceedings as to that cause of action. Upon remand Williams may find it desirable to amend his complaint to state more fully his claim of libel and slander.

Affirmed in part; reversed and remanded in part.