IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 20, 2019 Session

## FLOYD RODNEY BURNS v. STATE OF TENNESSEE

**Interlocutory Appeal from the Tennessee Claims Commission
No. T20161418     William A. Young, Commissioner**

_____

### No. E2018-02174-COA-R9-CV

_____

This appeal arose from a claim filed with the Tennessee Claims Commission ("the Commission") against the State of Tennessee ("the State"), seeking an award of damages for defamation allegedly committed by a district attorney general through statements made to the media concerning the claimant. The State filed, *inter alia*, a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim upon which relief could be granted, and the claimant filed, *inter alia*, a response objecting to the motion. Following a hearing, the Commission denied the State's motion to dismiss upon finding, in pertinent part, that the Commission did not have the authority to extend absolute immunity to district attorneys general. Upon the State's application, the Commission and this Court each granted permission for interlocutory review. Having considered the certified question of whether the absolute privilege afforded to state officials for statements made in the course of their official duties, as recognized in *Jones v. State*, 426 S.W.3d 50 (Tenn. 2013), extends to district attorneys general, we determine that the privilege does not apply and accordingly affirm the Commission's judgment.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Claims Commission Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KENNY W. ARMSTRONG, J., joined.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Laura Miller, Assistant Attorney General, for the appellant, the State of Tennessee.

Bryan E. Delius and Bryce W. McKenzie, Sevierville, Tennessee, for the appellee, Floyd Rodney Burns.

**OPINION**

**I. Factual and Procedural Background**

The claimant, Detective Floyd Rodney Burns ("Detective Burns"), had been employed with the Gatlinburg Police Department for approximately twenty-five years when the statements at issue in this defamation action were made. Detective Burns served as the lead investigator in the alleged assault and rape of an Ooltewah High School basketball player with a pool cue by teammates during a December 2015 team trip to a tournament in Gatlinburg. In February 2016, Detective Burns testified during a preliminary hearing conducted in the Hamilton County Juvenile Court concerning charges of failure to report child abuse that had been brought against the high school's athletic director and men's basketball coaches by Hamilton County District Attorney General Neal Pinkston ("General Pinkston"). As part of their coverage of the assault and resulting investigation, several media news outlets reported, *inter alia*, that Detective Burns had testified during the preliminary hearing that the assault did not constitute a rape because the alleged assailants were not seeking sexual gratification. At issue in this action are statements that General Pinkston subsequently made to the news media regarding Detective Burns's testimony.

As demonstrated by a press release emailed from General Pinkston's office to news outlets, General Pinkston issued the following statement to the media on February 17, 2016:

> At the request of Hamilton County District Attorney General Neal Pinkston the Tennessee Bureau of Investigation will investigate Gatlinburg Police Department Detective Floyd Rodney Burns for perjurious testimony related to statements he made during sworn testimony in Hamilton County Juvenile Court on Monday, February 15, 2015, regarding the assaults and rapes of four Ooltewah High School freshmen basketball players at a tournament in Sevier County last December.
>
> General Pinkston has instructed me to tell you he will have no further comment until the investigation is completed.

News reports attached to the pleadings in this case demonstrate that General Pinkston's office then issued the following statement on February 18, 2016:

> General Pinkston believes Detective Burns perjured himself in Hamilton County Juvenile Court on Monday, February 15. That's the only reason he

2

asked the TBI to investigate. He swore an oath to prosecute crimes, no matter who commits them.

On March 15, 2016, Detective Burns filed a claim alleging "libel (defamation)" in the Division of Claims Administration, asserting that he had been damaged by the widespread publication of General Pinkston's purportedly defamatory statements accusing him of perjury. *See* Tenn. Code Ann. § 9-8-307(a)(1)(R) (Supp. 2019) (providing the Claims Commission with "exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of 'state employees'" with regard to "[c]laims for libel and/or slander where a state employee is determined to be acting within the scope of employment.")[1] Detective Burns requested an award of $300,000 in damages.

Detective Burns attached to his claim two online articles, "Angry D.A. Seeks Perjury Charge Against Gatlinburg Detective," *WDEF News* (Feb. 17, 2016) and "Gatlinburg detective defends testimony, district attorney responds, claims detective perjured himself," *The Chattanooga Times Free Press* (Feb. 18, 2016), reflecting the statements at issue made by General Pinkston. In his claim, Detective Burns alleged that "General Pinkston's allegation that [Detective Burns] committed perjury was published in several media outlets including CBS News, the Chattanooga Times Free Press, the Knoxville News Sentinel, the Mountain Press, WTVC, WRCB, WDEF, WTVR, WVLT, and WATE." Detective Burns also attached a printout of a tweet sent online via Twitter by a reporter with *Mountain Press*, dated February 17, 2016, stating: "Release from their office doesn't specify what part of his testimony they're looking at. No more details to be released at this time."

The Division of Claims Administration transferred the claim to the Commission on June 13, 2016. *See* Tenn. Code Ann. § 9-8-402(c) (Supp. 2019) ("If the division fails to honor or deny the claim within the ninety-day settlement period, the division shall automatically transfer the claim to the administrative clerk of the claims commission."). The Commission, with Commissioner William O. Shults presiding, entered an order governing the proceedings on June 20, 2016.

Upon transfer to the Commission, Detective Burns filed a complaint, substantively identical to his previous claim, on July 8, 2016. The State responded by filing a motion to stay discovery and a motion to dismiss the complaint, pursuant to Tennessee Rule of Civil Procedure 12.02(6), for failure to state a claim upon which relief could be granted. As pertinent to this appeal, the State contended that General Pinkston had "absolute official privilege for public statements made in his official capacity" and that, in the

---

[1] "Libel and slander are both forms of defamation; libel being written defamation and slander being spoken defamation." *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).

alternative, he possessed "absolute prosecutorial immunity for statements made regarding the initiation of criminal charges." The State also argued that the statements at issue were not defamatory.

In support of its argument that General Pinkston's statements were protected by an absolute official privilege, the State argued that the Tennessee Supreme Court's holding in *Jones v. State*, 426 S.W.3d 50 (Tenn. 2013), should be applied to district attorneys general. *See Jones*, 426 S.W.3d at 58 (holding in a case involving statements made to the media by the Tennessee Department of Correction ("TDOC") Commissioner concerning the demotion of an employee that "cabinet-level executive officials 'have an absolute privilege to publish defamatory matter concerning another in communications made in the performance of [their] official duties.'" (quoting Restatement (Second) of Torts § 591 (1977))). As the State acknowledges, the *Jones* decision included the following footnote:

> This case concerns statements made by TDOC Commissioner Little, who is a cabinet-level official. We do not decide in this case whether the privilege of absolute immunity extends beyond cabinet-level officials.

*Jones*, 426 S.W.3d at 56 n.7.

Detective Burns filed responses in opposition to the motion to stay discovery and the motion to dismiss, maintaining in the latter that neither absolute privilege nor prosecutorial immunity applied and that the statements at issue were defamatory. In an order entered August 8, 2016, following a telephonic hearing, the Commission placed the claim in abeyance upon finding that Detective Burns had been charged with perjury in the Hamilton County Criminal Court and that proceeding with discovery in this civil action could potentially compromise Detective Burns's constitutional right against self-incrimination.[2] Following a subsequent telephonic hearing, the Commission, with Commissioner William A. Young now presiding, entered an order on April 2, 2018, removing the claim from abeyance and allowing Detective Burns to file an amended complaint.

In his amended complaint, Detective Burns averred that the criminal charge of perjury against him had been dismissed. Retaining the earlier allegations lodged in his complaint, Detective Burns also averred that publication of the allegedly defamatory statements had become more widespread and that he had "suffered great damage to his reputation, his active cases [had] been postponed, and he [had] been ridiculed by the

---

[2] The summons issued upon Detective Burns in the criminal court, attached in this record to the State's motion to dismiss, charged Detective Burns with making two statements while under oath in the juvenile court preliminary hearing that purportedly conflicted with statements made in the police reports he had prepared concerning the incident involving the Ooltewah basketball players.

public and media outlets." He again requested an award of $300,000 in damages. The State responded by filing a motion to dismiss the amended complaint, pursuant to Tennessee Rule of Civil Procedure 12.02(6), maintaining its arguments that General Pinkston's statements were covered by absolute privilege or, in the alternative, prosecutorial immunity and that the statements were not defamatory.

Following a hearing, the Commission entered an order denying the State's motion to dismiss the amended complaint on August 13, 2018. Noting that additional documents consisting of media reports had been attached as exhibits to both Detective Burns's amended complaint and the State's motion to dismiss, the Commission found that the exhibits did not convert the motion to dismiss to a motion for summary judgment. As relevant to the issue on interlocutory appeal, the Commission found that it could not extend the absolute privilege afforded to "high-ranking State executive officials" acting within the scope of their official duties ("Executive Official Privilege") to district attorneys general. The Commission also ruled that at the motion-to-dismiss stage, it could not conclude that prosecutorial immunity applied to this situation or that the statements at issue could not be found to be defamatory.

On September 12, 2018, the State filed a motion for permission to file an interlocutory appeal, pursuant to Tennessee Rule of Appellate Procedure 9, to which Detective Burns did not file a response. The Commission entered an order granting permission for interlocutory appeal on November 21, 2018, certifying the following two issues upon which the State had requested review:

1.     Whether the absolute privilege (absolute official privilege) afforded to State officials made in the course of their official duties extends to district attorneys general.

2.     Whether the absolute immunity afforded to district attorneys general for actions taken as part of their prosecutorial function extends to statements made to the media regarding pending criminal cases.

As to the second issue concerning prosecutorial immunity, the State in its motion for interlocutory appeal before this Court stated that it "no longer seeks immediate review of this question." This Court entered an order granting interlocutory review on January 28, 2019, narrowing the "only issue on appeal" to the first issue above.

## II.  Issue Presented

Pursuant to Tennessee Rule of Appellate Procedure 9, "we are limited on appeal to the questions certified by the trial court in its order granting permission to seek an

5

interlocutory appeal and in this Court's order granting the appeal." *In re Bridgestone/Firestone & Ford Motor Co. Litig.,* 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008) (citing Tenn. R. App. P. 9). Inasmuch as the State had withdrawn the second of the two issues certified for interlocutory appeal by the Commission, this Court directed in its order granting interlocutory appeal that the sole issue on appeal would be as follows:

> Whether the absolute privilege afforded to State officials for statements made in the course of their official duties, as recognized in *Jones v. State*, 426 S.W.3d 50 (Tenn. 2013), extends to district attorneys general.

### III. Standard of Review

The issue raised in this interlocutory appeal is a question of law. We review questions of law *de novo* with no presumption of correctness. *See Cunningham v. Williamson Cty. Hosp. Dist.,* 405 S.W.3d 41, 43 (Tenn. 2013) (citing *Mills v. Fulmarque, Inc.,* 360 S.W.3d 362, 366 (Tenn. 2012)).

We note that the Commission decided in this case to proceed with the State's motion as a Rule 12.02(6) motion to dismiss the amended complaint despite the State's attachment of several exhibits to both its motion to dismiss the initial complaint and its motion to dismiss the amended complaint. Generally, "[i]f matters outside the pleadings are presented in conjunction with either a Rule 12.02(6) motion [to dismiss] or a Rule 12.03 motion [for judgment on the pleadings] and the trial court does not exclude those matters, the court must treat such motions as motions for summary judgment and dispose of them as provided in Rule 56." *Patton v. Estate of Upchurch*, 242 S.W.3d 781, 786 (Tenn. Ct. App. 2007).

In determining that it was not necessary to convert the State's motion to dismiss to a motion for summary judgment, the Commission specifically found:

> As all of these exhibits [attached to the State's motion to dismiss] are either attached as exhibits to the amended complaint or referred to in the amended complaint, these exhibits, and the consideration of them by the undersigned in conjunction with the motion to dismiss, do not convert the [State's] motion to dismiss to a motion for summary judgment.

Upon review, we determine that the Commission properly considered the items noted and that such consideration did not necessitate converting the motion to dismiss to a motion for summary judgment. *See W. Express, Inc. v. Brentwood Servs., Inc.*, No. M2008-02227-COA-R3-CV, 2009 WL 3448747, at *3 (Tenn. Ct. App. Oct. 26, 2009) (delineating exceptions to the general rule, including "matters incorporated by reference

or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" (quoting *Ind. State Dist. Council of Laborers v. Brukardt*, No. M2007-02271-COA-R3-CV, 2009 WL 426237, at *8 (Tenn. Ct. App. Feb. 19, 2009))).

As our Supreme Court has explained with regard to motions seeking dismissal of a complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6):

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'"
>
> In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (internal citations omitted).

## IV. Executive Official Privilege

On the certified question before us, the State contends that General Pinkston, as a district attorney general, should be afforded absolute immunity against defamation for the statements he makes while performing his duties as a state official. While acknowledging that our Supreme Court's holding in *Jones* extends this absolute privilege only to "cabinet-level executive officials," *see Jones*, 426 S.W.3d at 58, the State relies on the *Jones* holding to argue that this Court should extend the Executive Official Privilege to state district attorneys general acting in the performance of their official duties. Detective Burns contends that the Commission properly determined that the Executive Official Privilege in Tennessee does not extend to district attorneys general. As the Commission noted and the parties acknowledge, this question, as it is specific to district attorneys general, is a matter of first impression in Tennessee. Upon careful

review of the applicable authorities, as well as the record in this case, we hold that the Executive Official Privilege does not extend to district attorneys general in Tennessee.

As our Supreme Court has explained concerning defamation claims generally:

> To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *See* Restatement (Second) of Torts § 580 B (1977); *Press, Inc. v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978). "Publication" is a term of art meaning the communication of defamatory matter to a third person. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994).

*Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571-72 (Tenn. 1999).

However, "[t]here are two types of privileges that can be raised as a defense in a defamation case, absolute and qualified." *Simpson Strong-Tie Co. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 22 (Tenn. 2007). The Executive Official Privilege, at issue here, is absolute, meaning that it is "a total immunity granted on the basis of the speaker's position or status." *See Jones*, 426 S.W.3d at 53 (quoting Robert D. Sack, *Sack on Defamation: Libel, Slander and Related Problems* § 8.1 (4th ed. 2012)). An absolute privilege "is not defeated by the defendant's malice, ill-will, or improper purpose in publishing the defamatory communication." *Simpson Strong-Tie*, 232 S.W.3d at 22 (contrasting an absolute privilege with a qualified or conditional privilege, which "may be defeated if the defamatory publication was made with malice, ill-will, or for an improper purpose") (footnote omitted).

Our Supreme Court recently described the rationale for the development of privileges providing defenses to defamation as follows in relevant part:

> This appeal demonstrates the tension that exists between two competing social commodities: reputation and information. Protecting the first commodity are defamation lawsuits, which enable aggrieved individuals to seek redress from false statements of fact that impugn their reputations. In the 1966 case Rosenblatt v. Baer, 383 U.S. 75, 92, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966) (Stewart, J., concurring), former United States Supreme Court Justice Potter Stewart emphasized the importance of protecting individuals from reputational harm, noting that: "The right of a man to the protection of his own reputation from unjustified invasion and

8

wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." The danger posed by defamation lawsuits is that, if unrestrained, these lawsuits may obstruct access to the second commodity, information. For this reason, courts have developed a variety of privileges that provide defenses to defamation claims even when the accused actually defamed the accuser. *See generally* Restatement (Second) of Torts §§ 583-612 (1977).

*Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 211 (Tenn. 2019) (proceeding to analyze application of the fair report privilege as a qualified privilege).

In establishing, as a matter of first impression in Tennessee at the time, the Executive Official Privilege, our Supreme Court stated the following in relevant part:

> In *Barr v. Matteo*, 360 U.S. 564, 79 S. Ct. 1335, 3 L. Ed. 2d 1434 (1959), the U.S. Supreme Court adopted an absolute privilege for federal executive officials who publish defamatory statements in the performance of their official duties. In a plurality opinion, Justice John Marshall Harlan expressed the following rationale:
>
> > It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.
>
> *Id.* at 571, 79 S. Ct. 1335. Justice Harlan further explained that the invocation of the absolute privilege represented "an expression of a policy designed to aid in the effective functioning of government." *Id.* at 572-73, 79 S. Ct. 1335.
>
> In *Barr*, the Court held that absolute privilege applied to the acting director of a federal agency who had issued a press release about former employees of the agency. The former employees contended that the director's press release contained defamatory statements. However, the Supreme Court ruled that the director was protected by absolute privilege when he issued the press release and dismissed the employees' claims,

reasoning that communicating with the media by disseminating the press release "was an appropriate exercise of the discretion which an officer of that rank must possess if the public service is to function effectively." *Id.* at 575, 79 S. Ct. 1335. The *Barr* Court acknowledged that conferring an absolute privilege may lead to "occasional instances of actual injustice," but reasoned that such a price is "a necessary one to pay for the greater good." *Id.* at 576, 79 S. Ct. 1335. Previously, in *Gregoire v. Biddle*, Judge Learned Hand offered a similar rationale for adopting absolute immunity for government officials in the context of an allegedly unlawful arrest, explaining that:

> The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.

177 F.2d 579, 581 (2d Cir. 1949).

Immunizing government officials against harassment and giving them the ability to perform their jobs "in the unflinching discharge of their duties," however, is not the only rationale that supports adopting an absolute privilege against defamation for cabinet-level state executive officials. *Id.* In his separate concurring opinion in *Barr*, Justice Hugo Black explained that adopting an absolute privilege advanced significant First Amendment free speech interests. "The effective functioning of a free government like ours depends largely on the force of an informed public opinion," Justice Black explained. *Barr*, 360 U.S. at 577, 79 S. Ct. 1335 (Black, J., concurring). "This calls for the widest possible understanding of the quality of government service rendered by all elective or appointed public officials or employees." *Id.* We agree that the public has a vital interest in receiving information from public officials about the effective, or ineffective, functioning and performance of the government.

Consistent with the Supreme Court's holding in *Barr*, the Restatement (Second) of Torts provides for an absolute privilege against defamation claims for high-ranking federal and state executive officials. *See* Restatement (Second) of Torts § 591 (1977) ("An absolute privilege to publish defamatory matter concerning another in communications made in

the performance of his official duties exists for (a) any executive or administrative officer of the United States; or (b) a governor or other superior executive officer of a state."). Comment c to Section 591 further explains that "the absolute privilege stated in Clause (b) protects the superior officers of the state governments, including at least the governor, the attorney-general or the heads of state departments whose rank is the equivalent of cabinet rank in the Federal Government." *Id.* cmt. c.

"Like their federal counterparts, high-ranking elected state officials and other officials of cabinet level or equivalent rank are generally held entitled to an absolute privilege as to their defamatory communications while exercising discretionary functions." David Elder, *Defamation: A Lawyer's Guide* § 2:14 (2003). Many states have adopted the Restatement (Second) of Torts' absolute privilege against defamation claims for certain executive officials. In *Johnson v. Dirkswager*, for example, the Minnesota Supreme Court held that a state-level commissioner who allegedly uttered defamatory comments to the public about an employee through a press release was entitled to an absolute privilege. 315 N.W.2d 215 (Minn. 1982). Weighing the "public's right to know [against] a defamed individual's right to redress," the Minnesota Supreme Court ultimately concluded that "the balance is to be struck in favor of the public's right to know" because the state employee's interest must "yield[ ] to the needs of a free, democratic society to be apprised of the conduct of the public business by its public officials." *Id.* at 221, 223. In *Hackworth v. Larson*, the Supreme Court of South Dakota had reached an identical holding in a case involving the South Dakota Secretary of State, who had issued press releases stating that she had fired two employees. 83 S.D. 674, 165 N.W.2d 705 (1969). As the *Hackworth* court explained: "It is thought desirable to encourage free and uninhibited dissemination of information about governmental activities even if on occasions an individual suffers harm thereby." *Id.* at 709, 165 N.W.2d 705.

More recently, in *Salazar v. Morales*, the Texas Court of Appeals adopted the absolute privilege reflected by the Restatement (Second) of Torts as applied to the Texas Attorney General. 900 S.W.2d 929 (Tex. App. 1995). *Salazar* involved a defamation claim asserted against the Texas Attorney General regarding comments that he had made to the press about a former employee's termination. In affirming the Texas Attorney General's motion to dismiss, the Texas Court of Appeals determined that the Texas Attorney General "ha[d] an absolute privilege to publish defamatory statements in communications made in the performance of his

official duties." *Id.* at 932. The *Salazar* court also observed that: "All of the state courts that have addressed the issue have agreed that an absolute privilege . . . applies to state attorneys general." *Id.*, citing *Kilgore v. Younger*, 30 Cal. 3d 770, 180 Cal. Rptr. 657, 640 P.2d 793, 797-98 (1982); *Little v. Spaeth*, 394 N.W.2d 700, 706 (N.D. 1986); *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892, 896 (1952); *Levinsky v. Diamond*, 151 Vt. 178, 559 A.2d 1073, 1078 (1989); *Gold Seal Chinchillas, Inc. v. State*, 69 Wash. 2d 828, 420 P.2d 698, 701 (1966); *Morton v. Hartigan*, 145 Ill. App. 3d 417, 99 Ill. Dec. 424, 495 N.E.2d 1159, 1164-65 (1986).

While the common law doctrine of absolute immunity remains the majority rule, we note that other states afford executive officials only a qualified privilege for statements made in the course of their official duties. *See* [Robert D. Sack,] *Sack* [*on Defamation: Libel, Slander and Related Problems*] § 8.2.5 [(4th ed. 2012)] ("A few states deny absolute immunity to public officials altogether and grant a qualified privilege for statements made in the course of official duties."). The Hawaii Supreme Court, for example, has rejected the application of an absolute privilege to state officials, instead holding that such officials are entitled to a qualified privilege. *Towse v. Hawaii*, 64 Haw. 624, 647 P.2d 696, 701-02 (1982). Similarly, in *Chamberlain v. Mathis*, the Arizona Supreme Court adopted a qualified privilege for the Director of the Arizona Department of Health Services, reasoning in that case that the rationale supporting absolute immunity is "countered by basic principles of equal justice." 151 Ariz. 551, 729 P.2d 905, 912 (1986).

We note that "the overwhelming majority of cases have struck the balance in favor of encouraging public officials to speak with complete candor—and without fear of legal recourse—with respect to their official duties." *Gold Seal*, 420 P.2d at 701. Pennsylvania, for example, reaffirmed the common law's absolute privilege against defamation for all "high public officials." *See Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194, 1196 (1996) ("This Court has never called into question, much less overruled, the common law doctrine of absolute privilege for high public officials."). We agree with this longstanding majority rule. Accordingly, <u>we adopt the position taken by the Restatement (Second) of Torts that cabinet-level executive officers are entitled to an absolute privilege from defamation claims arising out of comments made within the scope of their official duties</u>. Restatement (Second) of Torts § 591.

*Jones*, 426 S.W.3d at 53-56 (underlined emphasis added).

In finding that the Executive Official Privilege did not apply to General Pinkston as a district attorney general, the Commission considered, *inter alia*, the Tennessee Supreme Court's holding in *Jones* and stated in pertinent part:

> Having very carefully considered the *Jones* case, with the understanding that our Supreme Court has articulated the application of absolute privilege to "high-ranking state executive officials," and considering the rationale set forth by [the State's] counsel herein, and the counterarguments made by [Detective Burns's] counsel, the undersigned does not perceive that he has the authority to conclude that our High Court's holding in *Jones* would extend to a person in the position of district attorney general. While understanding and very much appreciating the hard work, tireless dedication and vigorous advocacy by district attorneys general across the State to protect our citizenry from crime, and while recognizing the important public policy considerations advocated by [the State], the Commission is thus far unconvinced that the categorization our Supreme Court intended or would intend for the term "high-ranking State executive officials" would embrace the position of district attorney general. The Commission has considered the statutory duties of district attorneys general as set forth in Tenn. Code Ann. § 8-7-103. Clearly, those duties include the very important role of prosecution of crime, but the enumerated duties appear to be absent responsibilities which would fall into the realm of those responsibilities attributed to "high-ranking State executive officials." As but one example, the duties do not appear to include establishment and enforcement of policies which would be applicable to the State as a whole. It is for these reasons that the Commission respectfully overrules that portion of the [State's] motion which is based upon the claim of absolute privilege.

The Commission thereby focused on whether the position of district attorney general fit within the parameters of the privilege, which was designated in the *Jones* holding as applying to "cabinet-level executive officials." *See Jones*, 426 S.W.3d at 51, 56, 58. In its order, the Commission utilized the phrase, "high-ranking State executive officials." The term, "high-ranking" was employed by the *Jones* Court in further explanation of its holding concerning cabinet-level officials. *See id.* at 58 ("This privilege ensures that high-ranking state executive officials will enjoy 'complete freedom of speech when discharging their duties.'" (quoting Robert D. Sack, *Sack on Defamation: Libel, Slander and Related Problems* § 8.2 (4th ed. 2012))). In *Jones*, our Supreme Court adopted the position taken in § 591 of the Restatement (Second) of Torts (1977), which provides:

An absolute privilege to publish defamatory matter concerning another in communications made in the performance of his official duties exists for

(a)     any executive or administrative officer of the United States; or
(b)     a governor or other superior executive officer of a state.

We note that in the area of identifying privileges that may be employed in defense of a defamation claim, the Tennessee Supreme Court again adopted the position of the Restatement (Second) of Torts in a recent decision by adopting the "modern version" of the fair report privilege set forth in the Restatement. *See Funk*, 570 S.W.3d at 217 ("[I]n keeping with our earlier decisions concerning defamation law, we adopt the approach of the Restatement (Second) of Torts section 611.") (citing *Jones*, 426 S.W.3d at 56 (for the Court's adoption of § 591 "as governing the executive and administrative officers' privilege"); *Simpson Strong-Tie*, 232 S.W.3d at 22-24 (for the Court's adoption of § 586 "as governing the attorneys' privilege")). In keeping with our High Court's approval to date of the Restatement (Second) of Torts as it applies to this area of the law, we examine the position taken in the Restatement as to district attorneys general.

Concerning the Executive Official Privilege set forth in § 591(b), the Restatement explains in an official comment to the section:

c.     All of the state courts that have considered the question have agreed that the absolute privilege stated in Clause (b) protects the superior officers of the state governments, including at least the governor, the attorney-general or the heads of state departments whose rank is the equivalent of cabinet rank in the Federal Government. A good number of the States have gone further, and have extended the absolute privilege to state officers of various ranks below that of cabinet level. The greater number of the state courts have not made the extension to the point of the federal rule and some have expressly confined the absolute privilege to superior officers of the States. This leaves the inferior state officers in these States with only a conditional privilege, as stated in § 598A.

The Restatement thus notes that in a majority of state jurisdictions, state officers who are not at cabinet or high-ranking level are entitled to the defense of a conditional privilege but not an absolute privilege. Section § 598A of the Restatement provides:

An occasion makes a publication conditionally privileged if an inferior administrative officer of a state or any of its subdivisions who is not

14

entitled to an absolute privilege makes a defamatory communication required or permitted in the performance of his official duties.

In its illustrations to § 591, the Restatement specifically addresses the situation of a state attorney general versus district attorneys general:

3.   A, the Attorney-General of State X, issues a press release explaining the delay of his office in prosecuting certain offenses against the State, in the course of which he accuses B of suppressing evidence that might lead to a conviction. A is absolutely privileged, and is not liable to B.

4.   The same facts as in Illustration 3, except that A is not Attorney-General, but is a local district attorney. A has only a conditional privilege, as stated in § 598A, even if it is found that the press release is within the scope of his official duties.

In support of its position in this case, the State correctly tracks our Supreme Court's adoption of the Restatement (Second) of Torts in this area and the distinction made in the Restatement between an absolute privilege for state attorneys general and a conditional privilege for district attorneys general. The State then asserts that this Court should follow the minority of jurisdictions addressing this question by extending the absolute privilege to state district attorneys general in Tennessee. Upon careful consideration, we disagree.

In adopting the Executive Official Privilege, the *Jones* Court quoted the Texas Court of Appeals as stating: "All of the state courts that have addressed the issue have agreed that an absolute privilege . . . applies to state attorneys general." *Jones*, 426 S.W.3d at 55 (quoting *Salazar v. Morales*, 900 S.W.2d 929, 932 (Tex. Ct. App. 1995)) (citations to other jurisdictions omitted here but included in quotation above). The *Jones* Court also noted that in comment c to § 591, the Restatement of Torts listed state attorneys general as among those high-ranking officers entitled to the absolute privilege when acting within the scope of their official duties. *Jones*, 426 S.W.3d at 55. However, because the issue before our Supreme Court in *Jones* was whether a cabinet-level state commissioner was entitled to the Executive Official Privilege, the Court did not directly address whether the privilege would apply to the state attorney general in Tennessee.

On appeal in this action, the State contends that the Executive Official Privilege should apply to both the state attorney general and to district attorneys general. We must emphasize that the question certified for interlocutory appeal does not ask this Court to decide whether the Executive Official Privilege applies to the state attorney general. We

therefore make no holding in this regard. *See* Tenn. R. App. P. 9; *In re Bridgestone/Firestone,* 286 S.W.3d at 902 (explaining that on interlocutory appeal, this Court is limited to the question or questions certified for interlocutory review). However, assuming, *arguendo,* that the Executive Official Privilege, as recognized in *Jones,* were to be found to apply to the state attorney general, we still cannot agree with the State's argument in this case that such an extension would extend to district attorneys general in Tennessee as well.

The State posits that for the public policy reasons that initially engendered the Executive Official Privilege, district attorneys general should enjoy absolute immunity, arguing specifically that the absolute privilege would facilitate (1) the need for district attorneys general to communicate while exercising their duties without fear of facing litigation, (2) the public's right to be informed regarding the prosecution of crimes and the activities of the district attorney's office, and (3) the need for district attorneys general to focus their time on official duties without spending time defending defamation lawsuits. The State's argument in this regard reflects our Supreme Court's recognition of "the tension that exists between two competing social commodities: reputation and information." *See Funk,* 570 S.W.3d at 211; *see also Jones,* 426 S.W.3d at 56 ("We recognize that in some cases, the application of an absolute privilege to cabinet-level state officials may leave aggrieved individuals without a remedy."). *See generally Barr v. Matteo,* 360 U.S. 564, 571 (1959). However, in *Jones,* our Supreme Court determined that this balance weighed toward the commodity of information only insofar as the Court adopted absolute immunity for "cabinet-level executive officials." *See Jones,* 426 S.W.3d at 58.

Upon adopting the Executive Official Privilege, the *Jones* Court proceeded to analyze whether the TDOC Commissioner, who had made the statements at issue in that case, was an official of such rank that his statements, if made within the scope of his official duties, would be protected by the privilege. The Court stated in relevant part:

> In Tennessee, commissioners serve as the heads of state departments and function as part of the "Governor's Cabinet." These officials formulate official policy and exercise significant supervisory authority in conducting state business. Such officials must have the flexibility to make important decisions free from fear that they will have to defend themselves from lawsuits. *Gregoire* [*v. Biddle*], 177 F.2d [579,] 581 [(2nd Cir. 1949)]. Uninhibited communication with the public about governmental affairs is essential and must be protected. *Barr,* 360 U.S. at 577, 79 S.Ct. 1335 (Black, J., concurring). Because providing cabinet-level executive officials with anything less than absolute immunity from defamation claims would also force such officials to spend time responding to lawsuits rather than

16

discharging their public duties, *see Gregoire*, 177 F.2d at 581, we hold that providing absolute immunity to such officials is appropriate.

*Id.* at 56 (footnotes omitted). The *Jones* Court thus found that a state commissioner was at the high-ranking level of "formulat[ing] official policy." *Id.*

In reaching its decision concerning the inapplicability of the Executive Official Privilege in this case, the Commissioner considered the statutory duties of district attorneys general. Tennessee Code Annotated § 8-7-103 (2016) provides:

Each district attorney general:

(1) Shall prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto, including prosecuting cases in a municipal court where the municipality provides sufficient personnel to the district attorney general for that purpose;

(2) Shall prosecute in the federal court all criminal cases removed from a state court in the district to any inferior court;

(3) May cooperate and assist, upon the request or direction of the attorney general and reporter, in the bringing, prosecution, defense, preparation, and trial of all cases in the circuit and chancery courts in which the attorney general and reporter is required to appear for the protection of the state or the public interest;

(4) Shall give an opinion, without charge, whenever called upon by any county officer in the district, upon a question of criminal law relating to the duties of the county officer's office;

(5) Shall submit to the office of executive director for the district attorneys general conference within ninety (90) days after the end of each fiscal year, a written report specifying:

(A) Each source from which funds were received by the office of the district attorney general during the fiscal year;

(B) The amount of funds received from each source; and

(C) The disposition of such funds;

(6)    Shall have discretion in the performance of duties and responsibilities in the allocation of resources available to such district attorney general, any other law notwithstanding; and

(7)    Shall have authority to delegate the foregoing duties and responsibilities to an assistant district attorney general.

We determine that the Commission properly found that, while vital to the public, the statutory duties of district attorneys general do not include formulating official policy at the state level.

In support of its position, the State relies in part on a handful of state appellate decisions from other jurisdictions wherein those states have extended an absolute official privilege to district attorneys general. *See Bianchi v. McQueen*, 58 N.E.3d 680, 702 (Ill. App. Ct. 2016); *Foster v. Pearcy*, 387 N.E.2d 446, 449 (Ind. 1979); *Sims v. Barnes*, 689 N.E.2d 734 (Ind. Ct. App. 1997); *Candelaria v. Robinson*, 606 P.2d 196, 199 (N.M. Ct. App. 1980); *Pickering v. Sacavage*, 642 A.2d 555, 559 (Pa. Commw. Ct. 1994); *O'Connor v. Donovan*, 48 A.3d 584, 592 (Vt. 2012). As the State acknowledges, these authorities constitute persuasive rather than controlling authority for Tennessee state courts. Having considered these authorities, we are not persuaded that this minority view should sway us from the confines of the Tennessee Supreme Court's adoption of the Executive Official Privilege as limited to cabinet-level or high-ranking state executive officials. *See Jones*, 426 S.W.3d at 56 n.7 ("We do not decide in this case whether the privilege of absolute immunity extends beyond cabinet-level officials.").

Finally, within this interlocutory appeal, the State has at no time requested certification of a question as to whether district attorneys general in Tennessee should be afforded a conditional privilege as state officials. *See Simpson Strong-Tie Co.*, 232 S.W.3d at 22 ("[A] qualified or conditional privilege is one that may be defeated if the defamatory publication was made with malice, ill-will, or for an improper purpose."). We will therefore issue no holding in this decision concerning whether district attorneys general should be afforded a conditional privilege due to their status as state officials. *See* Tenn. R. App. P. 9; *In re Bridgestone/Firestone,* 286 S.W.3d at 902. We note that depending on the situation, other privileges or immunities may apply to protect a district attorney general's statements made within the scope of his or her official duties as a prosecutor, such as absolute prosecutorial immunity for "conduct intimately associated with the judicial process," *see Morton v. State*, No. M2008-02305-COA-R3-CV, 2009 WL 3295202, at *3 (Tenn. Ct. App. Oct. 13, 2009), or the absolute immunity of the litigation privilege for "statements made in the course of judicial proceedings," *see Jones v. Trice,* 360 S.W.2d 48, 51 (Tenn. 1962). We emphasize that within the parameters of

this interlocutory appeal, we have reached no conclusion as to whether General Pinkston made the statements at issue within the scope of his official duties.

## V. Conclusion

For the reasons stated above, we hold that the Executive Official Privilege, the absolute privilege afforded to state executive officials for statements made in the course of their official duties, as recognized in *Jones v. State*, 426 S.W.3d 50 (Tenn. 2013), does not extend to district attorneys general. We therefore affirm the Commission's judgment in this regard. This case is remanded to the Commission, pursuant to applicable law, for further proceedings consistent with this opinion and collection of costs assessed below. The costs on appeal are assessed against the appellant, the State of Tennessee.

_____
THOMAS R. FRIERSON, II, JUDGE